# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| LUCINDA LOVETT, Co-personal Representative of the Estate of Daniel J. Martin, et al., ) ) ) ) | |
| Plaintiffs, ) | Cause No. 2:15-cv-63-WTL-MJD |
| ) ) | |
| vs. ) ) | |
| LANDON HERBERT, et al., ) ) | |
| Defendants. ) | |

### ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendants' Motion for Summary Judgment (Dkt. No. 52). The motion is fully briefed, and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the Defendants' motion for the reasons set forth below.

### I.  STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations,

that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to 'scour the record in search of evidence to defeat a motion for summary judgment.'" *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation omitted).

## II.     SUMMARY OF FACTUAL ALLEGATIONS

The properly supported facts of record, viewed in the light most favorable to the Plaintiffs, Lucinda Lovett and Michael Lovett, Co-Personal Representatives of the Estate of Daniel J. Martin, are as follows.

On December 13, 2013, Danny Joe Martin was arrested by Indiana State Trooper Todd Brown as a habitual traffic violator and for operating a vehicle while intoxicated. Brown took Martin to the Clay County Jail. Martin was booked into the Clay County Jail by Amber Lambert and Defendants Landon Herbert and Zach Overton, correctional officers with the Clay County Sheriff. At the jail, Martin was given a breath test. Martin's blood alcohol content ("BAC") registered 0.16, although neither Defendant Herbert nor Defendant Overton looked at the sheet on which Martin's BAC was recorded. Defendant Herbert knew that Martin had failed a sobriety test at the scene of the arrest and had refused to take a breath test at the jail. Defendant Herbert smelled alcohol on Martin, but neither Herbert nor Overton observed any slurred speech or stumbling on Martin's part. After Martin was booked in and fingerprinted, he asked to retrieve a phone number from his cell phone so that he could arrange for his dog to be fed.

The receiving area of the jail, where new arrivals to the jail are temporarily housed, has six two-person holding cells (cells R1-R6), a padded cell, a one-person medical isolation cell, and a holding tank (drunk tank). Defendant Overton made the decision to place Martin in cell R-

4. After the officers finished booking Martin in, Defendant Herbert escorted Martin to cell R4. Holding cell R4 is a two-person cell with a bunk bed. The bunk bed did not have a ladder to access the top bunk. The lower bunk was occupied by an inmate who had recently undergone surgery for cancer.[1]

Martin told Herbert that he could not get onto the top bunk because he was too drunk.[2] Defendant Herbert told Martin to take the mattress from the top bunk and put it on the floor. The mattress can be removed from the bunk by one person, and that person does not need to climb to the top of the bunk to remove the mattress.

Martin eventually did climb onto the top bunk, where he lay for approximately twenty minutes. At approximately 2:30 a.m., while attempting to climb down from the top bunk, Martin fell and hit his head on a table that was on the opposite wall. No jail officer monitored Martin between the time he was placed in R4 and the time he fell.

Martin fell to the floor and lay face down. He broke two vertebrae and damaged his spinal cord in the fall, rendering him a quadriplegic. Defendant Herbert entered Martin's cell and found him to be unresponsive. Martin was transported by ambulance to a hospital located in Brazil, Indiana and subsequently airlifted to St. Vincent Hospital. Martin remained hospitalized or in a rehabilitation center until his death on May 7, 2014.

---

[1] Cell R1 housed one male inmate who was a safety hold from another county. Cell R2 was fully occupied with two male inmates. Cell R3 held one female inmate. Cell R5 held one female federal inmate. Cell R6 held one male inmate who was on lockdown for violence. The one-person medical isolation cell was occupied. The drunk tank held six ICE detainees who were scheduled to be transported out of the jail. The padded cell was unoccupied, and the jail officers decided to leave it unoccupied in case they needed to place a particular offender there.

[2] Whether Martin said that he could not get onto the top bunk because he was too drunk or simply said that he could not get on the top bunk is in dispute. For purposes of this decision, the Court accepts the version that is more favorable to the Plaintiffs as the non-moving parties.

### III.     DISCUSSION

The Plaintiffs have brought an action pursuant to 42 U.S.C. § 1983 alleging violations of the Fourth and Fourteenth Amendments. They seek compensation for injuries, including wrongful death, that they allege resulted from the negligent and objectively unreasonable treatment of Daniel J. Martin in the Clay County Jail on December 13, 2013. They have sued Michael W. Heaton, Sheriff of Clay County,[3] in his official capacity and jail officers Landon Herbert and Zachary Overton in their individual capacities.

#### A.   Fourth Amendment Claims[4]

The Plaintiffs argue that the Defendants violated Martin's Fourth Amendment rights by failing to exercise reasonable care for Martin's medical needs and safety. The Fourth Amendment's "objectively unreasonable" standard applies to claims brought by arrestees who have not yet had a probable cause hearing, regardless of whether the claims relate to an officer's conduct regarding an arrestee's medical care or general conditions of confinement. *See Currie v. Chhabra,* 728 F.3d 626, 629 (7th Cir. 2013). For the Plaintiffs to survive summary judgment on their claims brought under Section 1983, they are required to point to evidence of record from which a reasonable factfinder could find that the conduct of the Defendants was "objectively unreasonable." *Lopez v. City of Chicago*, 464 F.3d 711, 718 (7th Cir. 2006).

When determining whether an officer's response to an arrestee's medical need was objectively unreasonable, courts may look to four factors: (1) notice of the arrestee's medical need; (2) the seriousness of the medical need; (3) the nature or scope of the requested treatment;

---

[3] Heaton is no longer Sheriff.
[4] The Plaintiffs contend "that the Defendants decided to hand out on-the-spot punishment in violation of the Fourth Amendment." Dkt. No. 62 at 15. However, they fail to point to evidence to support the claim "that the Defendants' actions intended to put Martin at risk of failing from the top bunk." *Id.* at 16.

4

and (4) the police interests involved. *Florek v. Vill. of Mundelein, Ill.,* 649 F.3d 594, 600 (7th Cir. 2011) (citing *Williams v. Rodriguez,* 509 F.3d 392, 403 (7th Cir. 2007)). Courts look to whether an officer had "notice of the arrestee's medical need . . . whether by word . . . or through observation of the arrestee's physical symptoms." *Williams,* 509 F.3d at 403. The parties dispute whether the Defendants had notice of Martin's medical needs. The Plaintiffs argue that Martin was highly intoxicated and told Defendant Herbert that he was too drunk to climb onto the top bunk. The Defendants argue that they did not know that Martin was highly intoxicated and that Martin simply told Herbert that he could not climb onto the top bunk.

With regard to conditions of confinement, the objectively reasonable standard requires a balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The "test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application; however its proper application requires careful attention to the facts and circumstances of each particular case." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). The totality of the circumstances is considered in making the determination of reasonableness. *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). Here, again, the facts are in dispute as to Martin's level of intoxication and what he said to Herbert. If, in fact, Overton had notice that Martin was highly intoxicated, a reasonable jury could find that it was objectively unreasonable to assign him a top bunk, given the risk of severe injury if he were to fall.[5]

Because there are competing versions of what occurred and whether Overton and/or Herbert knew or should have ascertained Martin's level of intoxication before assigning him to a

---

[5] The drunk tank does not contain bunk beds.

5

cell, and the Court must view the facts in the light most favorable to the Plaintiffs, the Court finds that there are questions of fact regarding whether Defendants Herbert's and Overton's actions were objectively unreasonable that preclude summary judgment on the Plaintiffs' Fourth Amendment claims.

### B. Qualified Immunity

Notwithstanding the foregoing, the Defendants argue that, regardless of whether Defendants Herbert and Overton acted reasonably, they are entitled to qualified immunity. "Qualified immunity shields a government official from liability for civil damages unless his or her conduct violates a clearly established principle or constitutional right of which a reasonable person would have known at the time." *Betker v. Gomez,* 692 F.3d 854, 860 (7th Cir. 2012) (citations omitted). In determining whether a defendant is entitled to qualified immunity, courts must determine: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant[ ] violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *McComas v. Brickley,* 673 F.3d 722, 725 (7th Cir. 2012) (citations omitted).

As discussed above, the Plaintiffs have alleged sufficient facts to withstand summary judgment on their Fourth Amendment claims against the individual Defendants. As to the second prong of the inquiry—that is, whether the law was clearly established on December 13, 2013, that Martin had a Fourth Amendment right to have jail employees exercise reasonable care for his medical needs and safety, the Court finds that it was. For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658 (2012) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

To avoid a finding of qualified immunity, the Plaintiffs must "show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Chan v. Wodnicki*, 123 F.3d 1005, 1008 (7th Cir. 1997). Here, the Plaintiffs have not pointed to a reasonably analogous case. However, a plaintiff can defeat a qualified immunity defense by showing that "the conduct at issue is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Wheeler v. Lawson,* 539 F.3d 629, 639 (7th Cir. 2008) (quotation omitted).

Here, the factual disputes identified above regarding the officers' knowledge bear directly upon whether it was objectively reasonable for the individual Defendants to believe they acted in compliance with clearly established law. Therefore, the Court cannot decide at this stage of the proceedings whether their actions clearly violated established law. Summary judgment is not available where factual disputes infuse issues on which entitlement to immunity turns. *See Green v. Carlson,* 826 F.2d 647, 652 (7th Cir. 1987). Accordingly, summary judgment on the issue of qualified immunity must be denied. As such, the individual Defendants' motion for summary judgment is **DENIED** as to the Fourth Amendment claims.

### C. *Monell* Claim Against the Sheriff

The Defendants also argue that they are entitled to summary judgment on the Plaintiff's *Monell* claims. A government body may be liable under Section 1983 "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority."

*Cook Cnty. Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)). "'Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy which policy can be attributed to a municipal policymaker.'" *Roach v. City of Evansville,* 111 F.3d 544, 548 (7th Cir. 1997) (quoting *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985)).

> The Plaintiffs' arguments relevant to their *Monell* claims are as follows:
>
> The Defendants were well trained and aware that inmates in jail are subject to the Fourth Amendment, especially those entering the receiving area who have yet to have their initial Gerstein hearing. The Defendants' training records indicate that they are fully trained and aware that the Fourth Amendment is measured, using an objective reasonableness standard, and that pretrial detainees are not to be punished at all. (Doc. #53-1, Ex. A; Doc #53-3, Ex. A). This is a part of their basic training. Additionally, the Defendants received training for booking and classifying intoxicated individuals based on either increasing levels of intoxication or potential withdrawal. *Id.*

Dkt. No. 62 at 12.

> Here, Plaintiff alleges that the Sheriff of the Clay County Jail, an individual with the authority to make policy decisions, made a decision that violated Martin's constitutional rights and caused his injuries.

Dkt. No. 62 at 26.

> Martin alleges that the Sheriff of the Clay County Jail made a deliberate decision to deny Martin objectively reasonable care under the Fourth Amendment by periodically denying use of the drunk tank in order to house ICE detainees for the sheer convenience of the Jail and jailers. Martin's allegations—and his evidence—fit comfortably within the "authorized decisionmaker" rule, which does not require proof of multiple incidents. *Id.* Nowhere does Martin allege that Clay County Jail has an informal custom of not creating a protocol for intoxicated individuals/operational issues resulting from ICE detainee policy/practices. Martin alleges instead that the Sheriff made an affirmative, official decision not to specifically inform staff that there was no reason to exclude intoxicated individuals from the drunk tank when it is also used to temporarily house ICE detainees.

Dkt. No. 62 at 27-28.

> Sheriff Heaton chose to offer the Clay County Jail to house ICE detainees. He did so to make money. By choosing to use the jail as a profit center, he subordinated the principal obligation of a custodial authority: to ensure the safety of arrestees. Martin was entitled to be safely housed, until released. That unambiguous responsibility is not excused for the convenience of a contract. Policymakers make decisions to act and not to act; there is no reason why an official decision not to act should be any less culpable—or any less official—under section 1983 than one to act.

Dkt. No. 62 at 28.

> It is well documented in the record that Clay County Jail had an unwritten policy, custom and practice of denying essential facility resources, namely the drunk tank, to any new arrestee when ICE detainees were moved up to the holding area and held there until transported out.

Dkt. No. 62 at 30.

While it is difficult to discern exactly what the Plaintiffs are arguing, it is clear that the Plaintiffs have not alleged sufficient facts to support a finding that the unconstitutional act at issue in this case (i.e., knowingly assigning a highly intoxicated arrestee to an upper bunk) was caused by an official policy or custom or a widespread practice or custom. Nor have they pointed to evidence to support a finding that a failure to make policy was actionable in this instance. *See Thomas*, 604 F.3d at 303 ("[I]n situations where rules or regulations are required to remedy a potentially dangerous practice, the County's failure to make a policy is also actionable."). Accordingly, no liability can extend to the Sheriff under *Monell*, and the Defendants' motion for summary judgment is **GRANTED** with regard to that claim.

### D. State Law Wrongful Death Claim

The Defendants also argue that the state law wrongful death claim filed by Martin's estate fails because the estate failed to file a timely tort claim notice within 180 days of Martin's death. Danny Martin served a tort claim notice on the Clay County Sheriff on February 25, 2014. Martin died on May 7, 2014. The Plaintiffs do not argue that Martin's estate ever served a tort claim notice.

9

A claim against the state and employees of the state is barred unless notice of the claim is filed with the attorney general and the state agency involved within 180 days after the loss occurs. *Lake County Juvenile Court v. Swanson*, 671 N.E.2d 429, 437 (Ind. Ct. App. 1996). In Indiana, a claim for wrongful death is independent and not derivative of the underlying claim for personal injury, and the occurrence of a death is an essential element of a wrongful death cause of action. *Fisk v. United States*, 657 F.2d 167, 170-71 (7th Cir. 1981). "[U]ntil the death of the plaintiff's decedent there can be no claim for wrongful death, because until that event occurs, the damages the statute is intended to remedy have not been inflicted on the plaintiff." *Id.* at 171 (citation omitted). *See also Warrum v. United States*, 427 F.3d 1048 (7th Cir. 2005) (applying *Fisk*). Accordingly, contrary to their argument, the Plaintiffs' wrongful death claim is not a continuation of Martin's personal injury claim, and the Plaintiffs have failed to demonstrate compliance with the notice requirements of the Indiana Torts Claims Act. *See City of Indianapolis v. Satz*, 377 N.E.2d 623, 625 (Ind. 1978). The Defendants' motion for summary judgment is **GRANTED** with regard to this claim.

### IV.   CONCLUSION

For the reasons and to the extent set forth above, the Defendants' motion for summary judgment (Dkt. No. 52) is **GRANTED IN PART AND DENIED IN PART**. This case shall proceed on the following claims: the Plaintiffs' Fourth Amendment claims against Defendants Herbert and Overton.

**SO ORDERED: 3/2/17**

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.